```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                   WESTERN DIVISION
```

GENTIVA CERTIFIED HEALTHCARE CORP.                              PLAINTIFF

VS.                              CIVIL ACTION NO. 5:14-cv-97(DCB)(MTP)

ELIZABETH RAYBORN AND
ST. LUKE HOME HEALTH SERVICES, LLC                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendants Elizabeth Rayborn ("Rayborn") and St. Luke Home Health Services, LLC (St. Luke")'s Motion to Dismiss **(docket entry 59)**. Having carefully considered the motion and the plaintiff's response, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

The Complaint in this case was filed on October 27, 2014. The plaintiff, Gentiva Certified Healthcare Corp. ("Gentiva") alleges that defendants Rayborn and St. Luke are resident citizens of the State of Mississippi, that the plaintiff is a Delaware corporation with its principal place of business in Georgia, and that the amount in controversy exceeds $75,000. Complaint, ¶¶ 1-4.

The Complaint alleges that Rayborn, a registered nurse, was hired by Gentiva's McComb, Mississippi, branch in March of 2013, as a Home Health Clinical Specialist. At the time of her hire, she signed a binding employment contract containing a non-compete clause. Complaint, ¶¶ 7-11. The Complaint further alleges that Rayborn left Gentiva in July of 2014 and went to work for St. Luke

which "offers many of the same home health services as Gentiva to patients in McComb and the surrounding areas." Complaint, ¶ 12. Gentiva alleges that "[w]ithin weeks of leaving her employment, Rayborn was seen routinely visiting and marketing to the same doctor's [sic] offices and medical providers to whom she marketed for Gentiva," and that she "continues to regularly solicit referrals for St. Luke from the same referral sources she accessed for Gentiva, despite the restrictions in the non-compete agreement." Complaint, ¶¶ 15-16.

The Complaint asserts claims for breach of contract and bad faith breach of contract against Rayborn, and tortious interference with Gentiva's legitimate business interests against St. Luke. Complaint, ¶¶ 22-30. Gentiva seeks compensatory and punitive damages against Rayborn and St. Luke, as well as costs, including attorney's fees, for the prosecution of its suit to enforce the contract between Gentiva and Rayborn. Complaint, ¶¶ a-c.

The non-compete clause in the employment contract between Gentiva and Rayborn provided, inter alia, that for a period of nine months immediately following termination of Rayborn's employment, she was not to provide services to a business which competed with Gentiva where the services were the same or similar in kind or function to those Rayborn provided Gentiva, if such business was within a fifty mile radius from any Gentiva office where Rayborn was employed. Complaint, ¶ 9. The Complaint further alleges that

> Gentiva's patient load has been impacted since Rayborn left to work for St. Luke.  Each month since Rayborn began to work for St. Luke, Gentiva has lost 2-3 patients due to Rayborn's violation of the non-compete agreement.  Gentiva is suffering approximately $13,000 in lost revenue each month since Rayborn left, and will continue to do so for the remainder of the nine month "Restricted Period" if Rayborn is permitted to continue in violation of her non-compete agreement.

Complaint, ¶ 18.  Thus, at the time the Complaint was filed, Gentiva anticipated compensatory damages of nine times $13,000, or $117,000, plus punitive damages in an unspecified amount.[1]

The defendants filed their Answer and Defenses on November 21, 2014, reserving "the right to assert additional defenses and affirmative defenses which may be discovered during the course of this litigation."  Answer, p. 1.  The Answer also asserts that the plaintiff is not entitled to punitive damages.  Answer, p. 2.  A Case Management Order ("CMO") was entered on January 21, 2015, setting a discovery deadline of August 17, 2015, and expert designation deadlines of May 15, 2015 for plaintiff and June 15, 2015 for defendants.  CMO, pp. 3-4.

On August 17, 2015, the defendants filed their motion to

---

[1] Gentiva's Rule 26(a)(1) Initial Disclosures, dated January 14, 2015, state, in part:

> Plaintiff seeks compensatory damages for lost revenues resulting from Defendants' breach of Rayborn's non-compete agreement and interference with business relations, totaling an estimated $120,000.  Plaintiff also seeks punitive damages and attorney's fees.  Plaintiff reserves the right to revise this computation as discovery progresses and as additional damages accrue.

dismiss.  Attached to their supporting Memorandum as Exhibit B is Gentiva's Damages Expert's Report (filed under seal).  Gentiva's expert, M. Gregory King, CPA, in his "Calculation of Lost Revenue Subsequent to Elizabeth Rayborn's Resignation," estimates Gentiva's lost revenue from initial patient episodes for August 2014 through April 2015 (as compared to August 2013 through April 2014) to be $8,576.00, and lost revenue from re-certifications (comparing the same periods) to be $2,883.00, for a total of $11,459.00.  This is far short of Gentiva's original estimation of $120,000.00, and much less than the $75,000 amount in controversy required by 28 U.S.C. § 1332.  Furthermore, the defendants point out that "this estimate does not attribute the reduced profits to any alleged activities of Ms. Rayborn and does not take into consideration other factors that might have contributed to the reduction as none were provided.  Plaintiff, and Plaintiff alone, had the information that this calculation is based upon within its possession prior to serving the Complaint."  Defendants' Memorandum, p. 2.

The defendants further challenge the foundation on which the plaintiff's expert's figures are based:

> In its Initial Disclosures and discovery responses, Plaintiff has repeatedly identified Dr. Lucius Lampton of the Magnolia Clinic and his nurses as individuals who would support its allegations that Ms. Rayborn was marketing in violation of her non-competition agreement.  However, when deposed, neither Dr. Lampton nor his nurse provided such testimony.  In fact, both adamantly denied that Ms. Rayborn solicited or marketed on behalf of St. Luke.

4

Id. (citing excerpts from Dr. Lampton's deposition (Exhibit F) and a letter from Dr. Lampton to defendants' attorney (Exhibit 1 to Exhibit F)("Mrs. Rayborn is not soliciting referrals or marketing for St. Luke.")); excerpts from Hollie Andrews' deposition (Exhibit G) and Declaration of Hollie Andrews (Exhibit 1 to Exhibit G)("Ms. Rayborn has not solicited referrals or marketed St. Luke services in the Magnolia Clinic. Alison Strong is the marketer for St. Luke. Ms. Strong visits the clinic weekly to promote St. Luke's services. She has been marketing at our clinic for the past five years.")).

In response to the motion to dismiss, Gentiva asserts that its claim for punitive damages is sufficient to meet the amount in controversy requirement for federal court. In order for punitive damages to be awarded, the plaintiff must demonstrate a willful or malicious wrong, or a gross and reckless disregard for the rights of others. Valley Forge Ins. Co. v. Strickland, 620 So.2d 535, 540 (Miss. 1993). Punitive damages are appropriate only in the most egregious cases, so as to discourage similar conduct, and they should be awarded only in cases where the defendants' actions are extreme. Wirtz v. Switzer, 586 So.2d 775, 783 (Miss. 1991).

Gentiva contends that despite the defendants' position that Rayborn has not been working for St. Luke in a "marketing" position, "Rayborn (1) reports to a marketing director, (2) has admitted that as a St. Luke employee, she provided promotional

5

items to the Magnolia Clinic and other providers, and (3) has admitted to taking a patient referral from the Magnolia Clinic and giving it to the 'appropriate person' for St. Luke." Plaintiff's Memorandum, p. 3 (citing Rayborn's deposition). Furthermore, Gentiva asserts that Rayborn's job duties for St. Luke involve delivery of medical orders to doctors and healthcare providers, for signatures that relate to the ongoing treatment of St. Luke's patients. Id. Gentiva also states that as a St. Luke employee, Rayborn is assigned to many of the same clinics and medical providers with whom she worked as a Gentiva employee, and that as part of her duties for St. Luke, Rayborn handled delivery of orders as a Health Clinical Specialist, the exact same as duty she routinely handled for Gentiva, and is therefore expressly precluded by the non-compete agreement. Id. On this basis, Gentiva seeks punitive damages against both Rayborn and St. Luke.

The Mississippi Supreme Court has held that "no hard and fast rule exists" for measuring the maximum award of punitive damages that may be made in a particular case. Sessums v. Northtown Limousines, Inc., 664 So.2d 164, 169 (Miss. 1995). Similarly, the United States Supreme Court has held: "[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 458 (1993). The Court

further held:

> We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003).

In this case, the requisite $75,000 jurisdictional amount compared to a potential $13,000 compensatory award is less than a 6 to 1 ratio, well within the "single digit ratio" which the Supreme Court suggests complies with due process.

In any event, at this stage in the proceedings, the Court cannot find to a legal certainty that the plaintiff's claim is really for less than the jurisdictional amount. The Court shall therefore deny the defendants' motion without prejudice.

Accordingly,

IT IS HEREBY ORDERED that defendants Elizabeth Rayborn and St. Luke Home Health Services, LLC's Motion to Dismiss **(docket entry 59)** is DENIED WITHOUT PREJUDICE.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE